IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELANIE MASON, DOLORES MASON, | § § § | |
| *Plaintiffs,* | § § | SA-21-CV-00368-ESC |
| vs. | § § | |
| HELPING OUR SENIORS, LLC, | § § § | |
| *Defendant.* | § | |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court in the above-styled cause of action is Defendant's Motion for Summary Judgment [#23]. The District Court transferred this case to the docket of the undersigned after all parties consented to the jurisdiction of a United States Magistrate Judge. The undersigned therefore has authority to issue this Order pursuant to 28 U.S.C. § 636(c). Plaintiffs have filed a response in opposition to the motion [#25], to which Defendant has filed a reply [#26]. For the reasons that follow, the Court will **deny** the motion.

### I. Background

This is a retaliatory discharge action arising under Title VII of the Civil Rights Act of 1964. Plaintiffs Melanie Mason and her mother, Dolores Mason, were both employed by Defendant Helping Our Seniors, LLC ("HOS"), a company providing in-home, non-medical care and companion services to senior citizens in the San Antonio Metropolitan Area. (Cave Decl. [#23-1], at ¶ 3.) Plaintiffs allege that, on April 6, 2018, Melanie complained to Martha Cave, the owner of HOS, that she had been sexually harassed in the workplace by Ms. Cave's husband. (Am. Compl. [#7], at 3.) Melanie subsequently contacted the Equal Employment Opportunity

1

Commission (EEOC) to inquire about filing a complaint of sexual harassment.  (*Id.*)  Ms. Cave heard about the EEOC contact and called a meeting with Plaintiffs the following day, at the end of which she terminated their employment.  (*Id.* at 3–4.)  Melanie recorded most of the meeting, and Plaintiffs allege that Ms. Cave specifically stated during the meeting that Plaintiffs were being discharged because Melanie had contacted "the Labor Board."  (*Id.* at 4.)  Ms. Cave maintains that Plaintiffs were terminated for engaging in disruptive and unprofessional behavior in the HOS office.  (Cave Dep. [#23-2], at 60:6–61:17.)

According to their Amended Complaint, Plaintiffs filed charges of discrimination with the EEOC on April 9, 2018, and received their right to sue letters on March 1, 2021.  (Am. Compl. [#7], at 5.)  They filed this lawsuit asserting a claim of retaliatory discharge in violation of Title VII on April 9, 2021.  HOS has filed a motion for summary judgment, arguing that it is entitled to judgment as a matter of law because, during the relevant time period, it did not satisfy the statutory definition of employer under Title VII.  The motion is ripe for review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Objections to Summary Judgment Evidence

HOS objects to portions of Plaintiffs' summary judgment evidence, namely paragraphs 2 and 15 of Dolores Mason's declaration and Exhibits 5 and 12 attached thereto.  The Court overrules these objections.

**Paragraph 2**.  HOS objects to paragraph 2 of Dolores's declaration wherein she takes issue with Ms. Cave's statement in her deposition that caregivers are free to hire others to do their work.  Dolores's declaration states that Ms. Cave's statement is false, and caregivers never hired others to do their work for them while she worked for HOS.  (Dolores Decl. [#25-1], at ¶ 2.)  HOS argues that this paragraph should be stricken because Dolores fails to show knowledge about what other caregivers did in terms of subcontracting their work.  The Court disagrees.

The summary judgment record establishes that Dolores was hired in October 2016 as a caregiver and office assistant and was ultimately promoted to Caregiver Coordinator, where she was responsible for recruiting and interviewing new caregivers, receiving and reviewing caregiver logs and delivery records, and performing annual reviews of each caregiver. (*Id.* at ¶¶ 2, 6; Caregiver Coordinator Job Description [#25-3], at 2.) This evidence demonstrates that in her role, Dolores was aware of all the caregivers working for HOS, what activities and services they performed each week, and their hours and schedule. Furthermore, the Independent Contractor Agreement executed by all caregivers is consistent with Dolores's testimony, as it states that "[t]he Contractor may not assign any of its rights or duties under this Assignment without the prior written consent of the Company." (IC Agreement [#25-2], at ¶ G.)

In sum, there is sufficient evidence in the record to establish that Dolores has the personal knowledge to state that during her time working at HOS she never witnessed or had knowledge of any caregiver subcontracting his or her work to another individual. Further, her statements implicitly do not apply to periods when she did not work at HOS, as she lacks personal knowledge of that time. Whether caregivers in fact subcontracted their work is an issue of fact for the jury, which will evaluate the competing evidence on this point, including assessing the credibility of Ms. Cave and Dolores. The Court overrules this objection.

**Paragraph 15.** HOS objects to this paragraph of Dolores's declaration, in which she expresses her opinion that caregivers are integral to the business purpose of HOS and are in no way in business for themselves. (Dolores Decl. [#25-3], at ¶ 15.) HOS argues that this paragraph should be stricken because it contains statements that purport "to recite an inapplicable standard" regarding whether a caregiver is in business for herself and contains non-expert opinions of Dolores. The Court overrules this objection. Whether caregivers are in

4

business for themselves or are integral to the business of HOS are relevant factual considerations in evaluating whether HOS controls the work of its caregivers and the economic realities of the employment relationship. Given that Dolores was the Caregiver Coordinator, and her duties in that role as explained above, Dolores's lay opinion on this point is admissible under Federal Rule of Evidence 701.

**Exhibits 5 and 12.** HOS objects to Exhibits 5 and 12 to Dolores's declaration, which are an Orientation Checklist and a Drug Free Workplace Policy, both completed by Dolores Mason on October 13, 2016. HOS argues that the exhibits should be stricken because they do not specify whether Ms. Mason received them in her role as independent contractor/caregiver or employee/Caregiver Coordinator. The Court will overrule this objection. Again, the summary judgment evidence establishes that Ms. Mason was hired in October 2016 as a caregiver and office assistant and that at some later date she was promoted to the status of employee and Caregiver Coordinator. (Dolores Decl. [#25-1], at ¶¶ 2, 6.) As the challenged documents are signed and dated October 13, 2016, the Court will treat them as documents completed as part of her onboarding process as a caregiver.

## IV.  Analysis

Title VII prohibits an employer from discriminating against an employee for opposing any practice made an unlawful employment practice by statute or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. 42 U.S.C. § 2000e–3(a). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . ." *Id.* at § 2000e(b).

HOS argues that it is entitled to summary judgment because at the time of Plaintiffs' termination it was not a statutory employer under Title VII, as it did not employ 15 or more employees. Rather, HOS claims that its workforce was primarily comprised of caregivers working as independent contractors in the homes of HOS's senior clients. According to HOS, during the relevant time period, it only ever employed a maximum of 10 employees, two of which were Plaintiffs, and these employees performed roles distinct from caregivers. Plaintiffs respond that a genuine dispute of material fact remains as to whether HOS's caregivers were employees or independent contractors, precluding summary judgment.

As HOS concedes that during the relevant period it had more than 50 caregivers (Cave Dep. [#23-2], at 64:18–21), if a reasonable factfinder could conclude that HOS's caregivers—or even five of its caregivers—were, in fact, employees and not independent contractors, a fact issue also remains on the question of whether HOS satisfied Title VII's statutory definition of employer. The Court agrees with Plaintiffs that a genuine dispute of material fact exists as to whether HOS employed 15 or more employees during the relevant time period.

In determining whether an individual is an "employee" under Title VII, the Fifth Circuit applies the hybrid "economic realities/common law control test" first recognized in *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979). *See Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 271–72 (5th Cir. 1988) (summarizing the test). This test considers "the economic realities of the work relationship, and the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed, with emphasis on this latter control factor." *Id.* at 272; *see also Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993) ("The right to control an employee's conduct is the most important component of the test.").

When examining the control component, the Fifth Circuit has focused on "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Deal*, 5 F.3d at 119. The economic-realities component of the test focuses on the terms and conditions of employment, considering the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (quoting *Spirides*, 613 F.2d at 832).

**Common Law Control Test.** Regarding control of caregivers, the summary judgment record raises a fact issue as to whether HOS had the right to hire and fire its caregivers. *See Deal*, 5 F.3d at 119. Dolores states in her declaration that HOS screens, interviews, and hires its caregivers after receiving application forms typical of an application for employment, and that as Caregiver Coordinator, she held some of these responsibilities. (Dolores Decl. [#25-1], at ¶ 7; Caregiver Application [#25-4], at 2; Caregiver Coordinator Job Description [#25-3], at 2.) Caregivers receive annual evaluations by the Caregiver Coordinator for their performance and are subject to reprimand or discharge for failure to follow HOS policy, performance issues, or failure to submit daily activity reports and "Private PAS Service Delivery Records" (reports used to verify the services performed and the hours worked). (Cave Dep. [#23-2], at 9:2–13; Dolores

7

Decl. [#25-1], at ¶¶ 12–13; Service Delivery Record [#25-9], at 2.)  Each caregiver is also required to execute an Independent Contractor Agreement, which provides that HOS may terminate the agreement at any time upon delivery of written notice of termination for failure to perform caregiver obligations.  (IC Agreement [#25-2], at ¶ H.)

The record also contains evidence from which a reasonable factfinder could conclude HOS has the right to supervise its caregivers and to set caregiver work schedules.  *See Deal*, 5 F.3d at 119.  It is undisputed that caregivers perform their work in the homes of clients or in the nursing homes where they live and may decline a specific client assignment.  (Dolores Decl. [#25-1], at ¶ 2; Cave Decl. [#23-1], at ¶ 5.)  Although they do not have an on-site supervisor while performing their caregiving functions, caregivers are subject to general supervisory oversight by HOS.  Once hired, caregivers go through an orientation that includes review of HOS policies and procedures and must complete written quizzes on topics such as health and safety, company policies, HIPAA, using proper body mechanics, blood borne pathogens, risk management, emergency preparedness, pain management, and client confidentiality.  (Dolores Decl. [#25-1], at ¶ 9.)  Additionally, caregivers often receive hands-on training from existing caregivers to orient them to a specific client to whom they will be assigned.  (*Id.* at ¶ 9.)  As previously noted, caregivers also submit daily activity logs and weekly service delivery records to the Caregiver Coordinator, receive annual evaluations, and are subject to performance review and disciplinary reprimands for failure to adhere to HOS policies regarding attendance, absentee notice, dress code, and payment protocols.  (Cave Dep. [#23-2], at 9:2–13; Dolores Decl. [#25-1], at ¶¶ 10–13; Caregiver Guidelines [#25-16], at 2–4.)  Ms. Cave testified in her deposition that, although HOS's clients specify the hours a given caregiver works, if a caregiver does not follow these set hours, HOS has the authority to assign them to another client.  (Cave Dep. [#23-

2], at 9:14–20.) Finally, there is evidence in the record that HOS prohibits its caregivers from subcontracting their work to other individuals without written consent of HOS and that no caregiver did so during the time Plaintiffs were employed by HOS. (Dolores Decl. [#25-1], at ¶ 2; IC Agreement [#25-2], at ¶ G.) A factfinder could credit this evidence as further proof that HOS controls its caregiver workforce. Viewing the summary judgment evidence in the light most favorable to Plaintiffs, the Court finds ample evidence from which a reasonable juror could conclude that HOS has the right to control its caregivers.

**Economic Realities Test.** Applying the various factors guiding the economic-realities portion of the test also does not establish as a matter of law that caregivers were independent contractors, as opposed to employees of HOS, for purposes of Title VII. The first factor considers the kind of occupation and whether it is done by a specialist without supervision or under the direction of a supervisor. The second factor considers the skill required in the particular occupation. The evidence does not conclusively support the finding that caregivers are specialists or skilled workers or that they work without supervision. Caregivers are not licensed; they are not required to have any relevant experience before working for HOS; nor are they required to have even a high school diploma or its equivalency. (Dolores Decl. [#25-1], at ¶ 8; Caregiver Job Description [#25-11], at 2.)

As to supervision, caregivers are not permitted to perform their work in any manner they choose without oversight. Although they perform work without direct supervision, caregivers are required to follow HOS guidelines and policies as to dress code, attendance, absentee notice, and payment protocols. (Cave Dep. [#23-2], at 9:2–13; Dolores Decl. [#25-1], at ¶¶ 10–13; Caregiver Guidelines [#25-16], at 2–4.) HOS also has guidelines that direct caregivers how to greet their clients, conduct themselves during their caregiving, and establish parameters for the

working relationship between caregiver and client. (Caregiver Guidelines [#25-16], at 2–4.) As already noted, caregivers also receive hands-on training when assigned new clients, submit daily activity logs and weekly delivery records, are subject to performance review and annual evaluations, and face possible discipline for failure to adhere to HOS policies. (Dolores Decl. [#25-1], at ¶¶ 9–13; Cave Dep. [#23-2], at 9:2–13; Caregiver Guidelines [#25-16], at 2–4.) These factors to do not weigh in favor of finding HOS's caregivers to be independent contractors.

The third factor considers whether the caregivers are provided with any supplies or equipment by HOS. The undisputed summary judgment evidence establishes that caregivers are not expected or required to provide their own supplies or equipment. (Dolores Decl. [#25-1], at ¶ 14.) Although Ms. Cave testified in her deposition that HOS never provided supplies or equipment to its caregivers, Dolores states in her declaration that, on occasion, HOS has provided diapers and towels to a caregiver, when there are none available at the client's home. (Cave Dep. [#23-2], at 35:16–17; Dolores Decl. [#25-1], at ¶ 14.) The evidence on this factor therefore does not favor either classification.

The fourth, fifth, and sixth factors consider the length of time the person has worked for HOS, the method of payment, and the manner in which work is terminated. The summary judgment record establishes that many caregivers work exclusively for HOS over a period of many years; that caregivers are paid on an hourly basis once a week and are not paid overtime compensation; and that caregivers may be terminated for any reason upon written notice to the caregiver. (Dolores Decl. [#25-1], at ¶¶ 4–5, Pay Day Document [#25-7], at 2; IC Agreement [#25-2], at ¶ H.) There is also conflicting evidence regarding the reimbursement of expenses incurred by caregivers. Dolores states in her declaration that caregivers are reimbursed for

mileage, parking, and other incidental expenses, but the Independent Contractor Agreement states that HOS does not reimburse its caregivers for any expenses.  (Dolores Decl. [#25-1], at ¶ 5; IC Agreement [#25-2], at ¶ E ("Company will not reimburse the Contractor for any expenses incurred by Contractor as a result of services rendered under this Agreement, including, but not limited to, car related expenses and telephone expenses.").)  The evidence on these factors also does not weigh in favor of finding independent contractor status as a matter of law.

The eighth factor considers whether the work of caregivers is integral to the business of HOS.  It is clear from the record that HOS's entire business model is predicated on the work of its caregivers and therefore axiomatic that caregivers are integral to HOS's provision of in-home care for seniors.  This factor also weighs in favor of finding HOS's caregivers to be employees.

The seventh, ninth, and tenth factors—whether annual leave or retirement benefits are provided and whether HOS pays social security taxes—are the only factors that clearly favor classifying HOS's caregivers as independent contractors.  It is undisputed that HOS does not pay social security taxes on behalf of its caregivers, and caregivers are not given paid leave or retirement benefits, though they do receive an increased hourly rate if they work on certain holidays.  (Dolores Decl. [#25-1], at ¶ 5; Cave Decl. [#23-1], at ¶ 4; Pay Day Document [#25-7], at 2.)  Yet these factors are insufficient on their own to resolve the parties' factual dispute as a matter of law, especially in light of the precedence of the common law control test discussed *supra*.

The final factor considers the intention of the parties, which HOS argues is unequivocally reflected in the Independent Contractor Agreement it requires each caregiver to execute to begin work with HOS.  The Court is unpersuaded that HOS's unilateral decision to predicate employment on signing an independent contractor agreement is sufficient to establish the parties'

11

collective intent. For this same reason, the Court rejects HOS's argument that the fact that Plaintiffs themselves executed such agreements estops them from now arguing that HOS's caregivers were in reality employees. Labels are "dispositive only to the degree that the label mirrors the economic reality of the relationship." *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981) (analyzing economic realities of employment relationship in context of Fair Labor Standards Act).

In summary, applying the governing hybrid control/economic realities test, and considering the summary judgment record, the Court finds that a jury could reasonably conclude that HOS's caregivers were employees, not independent contractors, and that HOS therefore employed 15 or more employees during the relevant time period so as to fall within the statutory definition of "employer" under Title VII. Accordingly, HOS is not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that HOS's Motion for Summary Judgment [#23] is **DENIED**.

SIGNED this 9th day of June, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE